**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**LISA CURRY and**
**RHIANNON MONTOYA,**

        **Plaintiffs,**

**v.**                                       **No. 20-CV-00116-RB-SCY**

**OFFICER MALCOLM J. GONZALES; OFFICER**
**JOSEPH J. MARTINEZ; OFFICER J.P. VALDEZ;**
**WARDEN MARIANNA VIGIL; and CAPTAIN**
**ROBERT GONZALES, in their individual**
**capacities,**

        **Defendants.**

**PLAINTIFF LISA CURRY'S RESPONSE TO DEFENDANT ROBERT GONZALES'**
**MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY**

        Plaintiff Lisa Curry, by and through her counsel of record, Erlinda O. Johnson, Esq., and

Justine Fox-Young, Esq., hereby respectfully submits her response in opposition to Defendant

Robert Gonzales' motion, pursuant to Fed.R.Civ.P. 56(a), for summary judgment based on

qualified immunity. In support thereof, Plaintiff Curry submits the following.

**INTRODUCTION**

        On February 8, 2020, Plaintiff Curry filed her complaint for violations of her Eighth

Amendment rights and state tort claims, based on a pattern of sexual abuse to which she was

subjected while she was an inmate at the Springer Correctional Center ("SCC"), a state of New

Mexico Department of Corrections prison. The sexual abuse perpetrated by an SCC employee

(Joseph Martinez) continued from the time Plaintiff was an inmate at SCC to sometime in mid-

2018. Plaintiff alleged that the sexual abuse was allowed to continue at least in part due to the

actions and omissions of Security Supervisor Robert Gonzales to implement measures to protect

the inmates from sexual abuse and due to defendant Gonzales' practices that were intended to suppress the reporting of sexual abuse within the prison. Plaintiff alleged that movant's failures either to encourage reports of prison rape and or to take any action whatsoever in response to observations of suspicious behavior and wrongdoing on the part of defendant Martinez and complaints by other staff members of inappropriate behavior between Defendant Martinez and Plaintiff Curry, of which Defendant Robert Gonzales was put on notice, constituted deliberate indifference to the widely known problem of sexual abuse at the SCC by Defendant Martinez.

## PROCEDURAL BACKGROUND

On February 8, 2020, Plaintiff Curry filed her complaint for violations of her Eighth Amendment rights and state tort claims. (doc. 1) On January 21, 2021, Defendant Joseph Martinez filed an opposed motion to stay discovery and extension of all pretrial deadlines because he was charged criminally in state court for criminal sexual penetration against Ms. Curry and another inmate. (doc. 77) Between March 5, 2021, and September 27, 2021, Plaintiff's claims pursuant to the New Mexico Tort Claims Act were dismissed. (docs. 90, 92, 97, 122)

On January 27, 2021, Defendant Martinez filed a second motion to stay discovery pending resolution of the pending criminal case against him. (doc. 81) On March 18, 2021, this Court issued a memorandum opinion and order granting in part Defendant Martinez's opposed motion for a stay of discovery. (Doc. 93) On October 19, 2021, Plaintiffs filed an opposed motion to extend scheduling order deadlines, including discovery. On November 30, 2021, this Court issued a memorandum opinion and order granting plaintiffs' motion as to Plaintiff Lisa Curry since Plaintiff Curry has not conducted any discovery as to Joseph Martinez.

On November 12, 2021, Defendant Robert Gonzales ("Supervisory defendant") filed a motion for summary judgment based on qualified immunity, attaching several exhibits. (doc. 141)

This Court must deny Defendant Robert Gonzales' motion for summary judgment as there are numerous material facts in dispute and Plaintiff Curry must be permitted to continue conducting discovery pursuant to Federal Rule of Civil Procedure 56(D) in order to fully respond to Defendant Gonzales' motion.

## SUMMARY JUDGMENT IS PREMATURE AND PLAINTIFF CURRY REQUIRES DISCOVERY IN ORDER TO RESPOND TO THIS MOTION

The parties have not conducted any discovery in this matter with or related to Defendant Joseph Martinez, and, while Defendant Robert Gonzales sets forth in his motion for summary judgment a number of facts he claims are undisputed material facts, a great number of those facts are indeed disputed and directly contradicted by Defendant Robert Gonzales' October 11, 2021, sworn testimony provided in this matter. Plaintiff Curry further submits that Defendant Robert Gonzales indeed was made aware of the sexual misconduct by Defendant Martinez against Plaintiff Curry, but Defendant Gonzales failed altogether to take any administrative, disciplinary or investigative action against Martinez as it relates to Ms. Curry. (Exhibit 1 at pp. 254:11-16; 262:3-25; 263:6-11; 266:23-25; 267:3-19; 268:8-22; 269:5-25; 270:1-4; 270:11-16) Instead, Defendant Martinez continued to be employed at SCC and to have access to Ms. Curry (Exhibit 1 at pp. 292:23-25; 293:3-5; Exhibit 4, p.2)

Additionally, in order to properly respond, Plaintiff Curry is entitled to the opportunity to depose Joseph Martinez about whether Robert Gonzales made statements to him about Martinez's interactions with the female inmates or whether Defendant Martinez is aware of whether Robert Gonzales observed him interacting with the inmates, specifically Lisa Curry. (exhibit 2) Importantly, plaintiff Curry's counsel is entitled to question Martinez about the date of the incident wherein Robert Gonzales walked in on Ms. Curry and Martinez and one of Ms. Curry's boots was

off. Additionally, it is undisputed that after the January 10, 2018, investigation into allegations that Martinez had engaged in sexual misconduct with Ms. Curry, Defendant Martinez raped her at least one more time. (Doc. 1, p. 7, ππ 68-72; Exhibit 10, p.2). This last rape could have easily been avoided had Defendant Robert Gonzales placed Martinez under investigation and/or surveillance but that did not happen. (Exhibit 1, pp. 266:8-20; 270:11-16).

As set forth in the Affidavit of Erlinda O. Johnson, Esq., *see* Exhibit 2, additional discovery is needed to adequately respond to Defendant Gonzales' Motion. For example, Defendant Martinez must be deposed about what information he possesses about information that may have been relayed to Robert Gonzales regarding Mr. Martinez's interactions with the inmates and whether Gonzales had conversations with Martinez about his conduct. Martinez must also be deposed about the incident wherein Ms. Curry alleges Martinez sexually assaulted her and during which Robert Gonzales walked in and questioned Martinez about why Ms. Curry's shoe was off.

## <u>RESPONSE TO DEFENDANT ROBERT GONZALES'</u><br><u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

**No.1**:  Plaintiff Curry does not dispute the facts in this paragraph.

**No.2**:  Plaintiff does not dispute the facts in this paragraph.

**No.3**:  Plaintiff does not dispute the facts in this paragraph.

**No.4**:  Plaintiff Curry disputes some of the facts set forth in this paragraph. Plaintiff submits that she is not certain of the date when she was incarcerated, and she testified during her deposition that she "thought" it was December 2018. (Exhibit 3, p.23:7)

**No.5**:  Plaintiff does not dispute the facts in this paragraph.

**No.6**:  Plaintiff does not dispute the facts in this paragraph.

**No.7**:   Plaintiff does not dispute the facts in this paragraph.

**No.8**:  Plaintiff does not dispute the facts in this paragraph.

**No. 9:** Plaintiff does not dispute the facts in this paragraph.

**No.10:** Plaintiff disputes some of the facts set forth in this paragraph. While Plaintiff admits that her complaint states that "in the middle of February 2017, she was raped by Defendant Martinez in the mechanics room at SCC….," Plaintiff submits that she testified during her deposition that she did not recall the specific date of this incident. (Exhibit 3, pp. 126:22-25; 127:1-7; 127:17-25)

**No.11:** Plaintiff disputes some of the facts set forth in this paragraph. Plaintiff submits that given the evidence that she did not arrive at SCC until sometime after June 2017, the misconduct identified in this paragraph occurred sometime after June 2017. (exhibits 10 & 2)

**No.12:** Plaintiff does not dispute the facts in this paragraph.

**No. 13:** Plaintiff does not dispute the facts in this paragraph.

**No. 14:** Plaintiff does not dispute the facts in this paragraph.

**No. 15:** Plaintiff does not dispute the facts in this paragraph.

**No. 16:** Plaintiff does not dispute the facts in this paragraph.

**No. 17:** Plaintiff does not dispute the facts in this paragraph.

**No. 18:** Plaintiff disputes some of the facts set forth in this paragraph. Plaintiff submits that while she does not know the day of the week or time when the sexual assault by Martinez occurred, it had to have occurred sometime after she arrived at SCC, after June 2017. (Exhibits; 10 & 2)

**No. 19:** Plaintiff does not dispute the facts in this paragraph.

**No. 20:** Plaintiff does not dispute the facts in this paragraph.

**No. 21:** Plaintiff does not dispute the facts in this paragraph.

**No. 22:** Plaintiff does not dispute the facts in this paragraph.

**No. 23:** Plaintiff does not dispute the facts in this paragraph.

**No. 24:** Plaintiff does not dispute the facts in this paragraph.

**No. 25:** Plaintiff disputes some of the facts set forth in this paragraph. Plaintiff submits she did not "change her story." Rather, Plaintiff submits she clarified and provided additional detail as to what had occurred before Defendant Robert Gonzales walked in. (Exhibit 4, p.2)

**No. 26:** Plaintiff disputes some of the facts set forth in this paragraph. Plaintiff submits that prior to the lawsuit, she did make disclosures both to a friend and to a mental health counselor at SCC, respectively, that she had been raped by Joseph Martinez. (Exhibit 3, p. 231:3-23)

**No. 27:** Plaintiff does not dispute the facts in this paragraph.

**No. 28:** Plaintiff does not dispute the facts in this paragraph.

**No. 29: :** Plaintiff disputes some of the facts set forth in this paragraph. Plaintiff submits that Robert Gonzales told her to write a statement saying that she was denying anything was happening. (Exhibit 3, p. 136:8-16)

**No. 30:** Plaintiff does not dispute the facts in this paragraph.

**No. 31:** Plaintiff does not dispute the facts in this paragraph.

**No. 32:** Plaintiff does not dispute the facts in this paragraph.

**No. 33:** Plaintiff disputes the facts set forth in this paragraph. Plaintiff Curry did tell New Mexico State Police Agent Jackson that she had been sexually assaulted by Joseph Martinez. (Exhibit 4, p.2)

**No. 34:** Plaintiff does not dispute the facts in this paragraph.

**No. 35:** Plaintiff does not dispute the facts in this paragraph.

**No. 36:** Plaintiff disputes some of the facts set forth in this paragraph. Plaintiff testified that as far as she knew, no one witnessed JJ Martinez sexually assaulting her. However, Ms. Curry does not know if anyone saw Martinez assaulting her. It should be noted that there were several

reports submitted by staff and inmates that they observed inappropriate behavior between Martinez and inmates, including between Martinez and Plaintiff Curry. (Exhibit 5, p.2, 6 &7, p. 3)

    **No. 37:** Plaintiff does not dispute the facts in this paragraph.

    **No. 38:** Plaintiff does not dispute the facts in this paragraph.

    **No. 39:** Plaintiff does not dispute the facts in this paragraph.

    **No. 40:** Plaintiff does not dispute the facts in this paragraph.

    **No. 41:** Plaintiff disputes some of the facts set forth in this paragraph. Plaintiff submits that Robert Gonzales' observation of Ms. Curry and Martinez when her boot was off and when Gonzales reported that the situation seemed overall "suspicious" to him, (Exhibit 1, p.256:3-14; Exhibit 8), would indicate that Gonzales knew that there was something inappropriate occurring between Ms. Curry and Joseph Martinez. There is also evidence that Robert Gonzales was made aware that Joseph Martinez posed a potential threat to the inmates (Exhibit 1, p. 254:2-16) and that there was inappropriate, nonconsensual and unlawful sexual conduct between Martinez and Ms. Curry. (Exhibit 5, p.2, 6 &7, p. 3).

## ADDITIONAL STATEMENT OF FACTS

    1.   Robert Gonzales was the chief of Security at the Springer Correctional Center (SCC) and was responsible for overseeing all security operations on the facility, any issues with correctional officers, evaluations of all employees and anything having to do with cameras at the facility. (Exhibit 1, pp. 22:13-23, 26:10)

    2.   Robert Gonzales was also responsible for conducting investigations at SCC if complaints of inappropriate conduct between staff and inmates came to his attention. (Exhibit 1, pp. 22:24-25; 23:1-8)

    3.   As Chief of Security, at all relevant times, Robert Gonzales was responsible for the

safety of the inmates at SCC. (exhibit 1, p. 26:11-15)

4.   Robert Gonzales was in charge of conducting follow-up investigations of staff who have been alleged to be engaged in some sort of misconduct. ( Exhibit 1, p. 142:12-22)

5.   Before Robert Gonzales observed Lisa Curry and Joseph Martinez in the mechanics' room in a situation Robert Gonzales described as suspicious, (exhibit 8; Exhibit 1, pp. 266:23-25, 267:3), he had already been alerted that Joseph Martinez was engaging in improper conduct. (Exhibit 1, p. 254:11-16)

6.   After the suspicious incident observed by Robert Gonzales, he became aware that another inmate requested to be transferred out of maintenance because of the interactions between Lisa Curry and Joseph Martinez and due to Martinez's abuse. (Exhibit 1, pp. 257:10-25; 260:18-22; 262:25; 263:1-5)

7.   Despite observing a suspicious situation between Lisa Curry and Joseph Martinez, Robert Gonzales did not make any efforts to monitor the cameras for interactions between Lisa Curry and Joseph Martinez. (Exhibit 1, p. 262:3-18)

8.   Despite having received information that another inmate (Wilson) did not wish to be around Joseph Martinez and Lisa Curry in maintenance, Robert Gonzales did not follow up or do any surveillance of Joseph Martinez and Lisa Curry whatsoever. (Exhibit 1, pp. 263:1-11; 267:4-19; Exhibit 8)

9.   After observing the suspicious incident in the mechanics' room between Lisa Curry and Martinez and learning that Inmate Wilson did not wish to be around Lisa Curry and Martinez, Robert Gonzales did not pull any other camera footage for the different areas where Lisa Curry worked with Joseph Martinez. (Exhibit 1, pp. 264:20-24, 265:1; Exhibit 8)

10.   On January 10, 2018, Robert Gonzales became aware that an inmate had reported to

Sgt. Eva Ortiz that Joseph Martinez was having sex with some of the inmates in the maintenance department and that Lisa Curry was saying that she smelled like men's cologne and that Joseph Martinez had a big penis. (Exhibit 6; Exhibit 1, p. 268:8-22) However, Robert Gonzales failed to place Martinez under investigation at that time. (Exhibit 1, p. 268:8-22)

11.    Robert Gonzales became aware that SCC nurse Christine Sisneros had observed Martinez interacting in an inappropriate and overly friendly and close manner when he was putting band aids on Ms. Curry's fingers. (Exhibit 7, p. 3; Exhibit 1, pp. 269:5-9; 269:20-24; 270:1:4)

12.    After Nurse Sisneros' reported her observation of inappropriate behavior between Martinez and Ms. Curry, Robert Gonzales did not put Martinez under investigation. (Exhibit 1, p. 270:11-16)

13.    After the January 10, 2018, reports to Robert Gonzales about sexual misconduct by Joseph Martinez against Lisa Curry, Joseph Martinez digitally raped Lisa Curry again. (doc. 1, p. 7, ππ 70-72; Exhibit 10, p. 2, Exhibit 3, p. 202:14-20)

14.    During the sexual assault in the mechanics room when Joseph Martinez told Ms. Curry to get undressed but did not finish the assault because Robert Gonzales walked in on Martinez and Ms. Curry, Robert Gonzales inquired into why Ms. Curry's boot was off. (Exhibit 3, pp. 128:16-25, 129:1-8, 133:2-8)

15.    After the January 10, 2018, reports that Joseph Martinez was having sex with Lisa Curry, Robert Gonzales directed Lisa Curry to write a statement saying that she was denying anything was happening. (Exhibit 3, p. 136:6-16)

16.    Robert Gonzales claimed that in 2019, in preparation for a PREA audit, they got rid of camera blind spots at the facility. However, that was not the case as Joseph Martinez continued abusing Lisa Curry, after January 2018, in areas not covered by cameras. (Exhibit 1, p. 78:19-25;

Exhibit 10; Exhibit 3, pp. 223:22-25, 224:1-9)

17.   When Warden Marianna Vigil took over as warden of SCC, Robert Gonzales did not inform the warden of Ms. Curry's allegations against Joseph Martinez. (exhibit 11, pp. 135:22-25, 136:1-4)

## ARGUMENT

## I.   THE PLEADING STANDARD FOR SUMMARY JUDGMENT MOTIONS

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'"  *Herrera v. Santa Fe Pub. Schs*., No. CIV 11-0422 JB/KBM, 2013 WL 3462484, at *23 (D.N.M. June 28, 2013)(Browning, J.)(*quoting Bacchus Indus., Inc. v. Arvin Indus., Inc*., 939 F.2d 887, 891 (10th Cir. 1991)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 331 (1986).

Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250.  In ruling on a motion for summary judgment, the court must resolve all reasonable inferences and doubts in favor of the nonmoving party and construe all evidence in the light most favorable to the nonmoving party.  *See Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

 Here, genuine factual disputes exist, meaning that on that basis alone, Defendant Robert Gonzales' motion must be denied.  Indeed, even comparing Defendant Gonzales' recitation of his purported undisputed facts with Ms. Curry's responses to Gonzales' facts as well as Ms. Curry's additional facts and exhibits, there are significant and substantive disputes over Defendant's asserted facts.

## II.    LAW REGARDING LIABILITY FOR CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  When considering the merits of qualified immunity at the "summary judgment stage . . . it is generally the district court's exclusive job to determine which facts a jury could reasonably find from the evidence presented to it by the litigants." *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (*quoting Johnson v. Jones,* 515 U.S. 304, 313 (1995)).  District courts then examine those facts "in the light most favorable to the plaintiff, to determine whether they amount to a violation of a clearly-established right." *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010); (*quoting Walker v. City of Orem,* 451 F.3d 1139, 1155 (10th Cir.2006)). "In the qualified-immunity analysis, the Court must take the facts as the Plaintiffs assert them as true, unless blatantly contradicted by the record." *Kerns v. Board of Com'rs of Bernalillo County,* 707 F.Supp.2d 1190, 1273 (D.N.M. 2010).

Once a defendant asserts qualified immunity from a § 1983 suit, the plaintiff bears the burden of disproving the official's entitlement to qualified immunity. *Dodds*, 614 F.3d at 1191. Although the plaintiff bears this burden, the evidence is reviewed in the light most favorable to the plaintiff when, as here, defendant Robert Gonzales seeks summary judgment on the ground of qualified immunity. *Fletcher v. Burkhalter*, 605 F.3d 1091, 1095 (10th Cir. 2010). "To overcome the qualified immunity defense, the plaintiff must identify a clearly established statutory or constitutional right of which a reasonable person would have known, and then allege facts to show that the defendant's conduct violated that right." *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000). Courts may address those two prongs in either order. *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009) (*citing Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009)). To determine whether a right was clearly established, a court must consider whether the right was sufficiently clear that a reasonable government employee would understand that he or

she violated a right. *See Casey v. W. Las Vegas Indep. Sch. Dist*., 473 F.3d 1323, 1327 (10th Cir. 2007).

> **A.      Eighth Amendment Right to be Free from Cruel and Unusual Punishment**

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Prison officials are responsible for taking reasonable measures to ensure the safety of inmates. *See Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999). Where a plaintiff asserts a cruel and unusual punishment claim, she must allege, and ultimately prove that: (1) "the alleged injury or deprivation [is] sufficiently serious" (known as the "objective component"); and (2) "the prison official . . . ha[d] a sufficiently culpable state of mind to violate the constitutional standard" (known as the "subjective component"). *Tafoya*, 516 F.3d at 916. Evidence of rape and sexual assault by jail guards or other employees is "sufficiently serious" to satisfy the objective component of a cruel and unusual punishment claim. *See, e.g., id*. ("There is no question that sexual assault of the kind suffered by Ms. Tafoya meets this objective component of an Eighth Amendment claim."); *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993) ("[A]n inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards."); *Boddie v. Schnieder*, 105 F.3d 857, 861 (2nd Cir.1997) ("[L]ike the rape of an inmate by another inmate, sexual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society."). It is undisputed that a prison official's sexual assault against an inmate constitutes an Eighth Amendment violation. *See Farmer v. Brennan*, 511 U.S. 825, 838-39 (1994).

The "state of mind" required by the subjective component is one of "deliberate indifference to inmate health and safety." *Farmer*, 511 U.S. at 834. In order to establish "deliberate indifference," the plaintiff must show that the defendant official "knows of and disregards an excessive risk to inmate health or safety." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). An official is deliberately indifferent where he "has knowledge of a substantial risk of serious harm to inmates . . . [and] fails to take reasonable steps to alleviate that risk." *Tafoya*, 516 F.3d at 916 (emphasis added). "The official's knowledge of the risk need not be knowledge of a substantial risk to a particular inmate, or knowledge of the particular manner in which injury might occur." *Id.* (*citing Farmer*, 511 U.S. at 843). "Although deliberate indifference is a subjective inquiry, a jury is permitted to infer that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition." *Id.*; *see also Farmer*, 511 U.S. at 842 (A "fact finder may conclude that [an] official knew of a substantial risk from the very fact that the risk was obvious."). "[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk ... for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

### B.    Supervisory Liability

It is well-established that officials, like Robert Gonzales, "may be held individually liable for policies they promulgate, implement, or maintain that deprive persons of their federally protected rights." *Dodds v. Richardson*, 614 F .3d 1185, 1207 (10th Cir. 2010). "To establish a claim of supervisory liability under § 1983, a plaintiff must plead and prove that (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind

[i.e., "deliberate indifference"] required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199.

The *Dodds* Court specifically addressed qualified immunity in the supervisory liability context. The Court found facts sufficient to satisfy the first prong of the qualified immunity test where the summary judgment evidence tended to show that the defendant there "may have deliberately enforced or actively maintained the policies" which caused the alleged Constitutional deprivation at issue. *Dodds*, 614 F .3d at 1203-04. As previously noted, it is well established that "[t]he Eighth Amendment imposes a duty on prison officials to 'take reasonable measures to guarantee safety of the inmates.'" *Nunez v. Goord,* 172 F.Supp.2d 417, 430 (S.D.N.Y.2001) (quoting *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970 (1994)). A supervisor can be found liable if his violation includes his "own culpable action or inaction in the training, supervision, or control of subordinates," or "conduct that showed a reckless or callous indifference of the rights of others." *Starr v. Baca,* 652 F.3d 1202, 1206 (9th Cir. 2011).

The second element plaintiff must establish is the "'requisite causal connection' by showing 'the defendant set in motion a series of events that defendant knew or reasonably should have known would cause others to deprive the plaintiff of her Constitutional rights.'" *Keith v. Koerner,* 843 F.3d 833, 847 (10th Cir. 2016)(*Keith II*)(*quoting Schneider v. City of Grand Junction Police Dep't.*, 717 F.3d at 768). "To establish a cognizable Eighth Amendment claim for failure to protect [an inmate from harm], the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm[,] the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *See Smith v. Cummings,* 445 F.3d 1254, 1258 (10th Cir. 2006)(quoting *Verdecia v. Adams,* 327 F.3d 1171, 1175 (10th Cir.2003)).

The Tenth Circuit has held that a supervising official's management actions or deficiencies, such as the actions and deficiencies of defendant Gonzales here, may be sufficient to establish causation. *Keith v. Koerner,* 843 F.3d 833, 847 (10th Cir. 2016)(*Keith II*); *Tafoya*, 516 F.3d at 922 (acts or deficiencies which result in a jail atmosphere in which discipline and supervision is entirely lacking , may be sufficiently related to a particular instance of assault that a jury is permitted to conclude that the conditions proximately caused the assault).

For purposes of this response, Plaintiff Curry has presented sufficient credible evidence from which a jury may conclude that she was sexually assaulted by Defendant Joseph Martinez and that sometime after Ms. Curry became an inmate at the Springer Correctional Center (SCC), Defendant Robert Gonzales observed a "suspicious situation" between Martinez and Ms. Curry wherein Robert Gonzales discovered Ms. Curry with only one shoe on. (Exhibit 1, pp. 256:4-21; 247:2-15; 256:15-21). The suspicious situation consisted of Martinez engaging in sexual misconduct with Ms. Curry right before Robert Gonzales walked in on them. (Exhibit 3, pp. 228:8-25; 229:1-9) More significantly, prior to this incident, Robert Gonzales was aware that Joseph Martinez posed a risk and potential threat to the health and safety of the inmates at SCC. (Exhibit 1, pp. 254:11-15, 256:4-14). Yet, Robert Gonzales did nothing to protect inmates like Ms. Curry. As a maintenance correctional officer, while Defendant Gonzales was the chief of security and Captain at SCC, Defendant Martinez continued to sexually harass and assault Plaintiff Curry. (exhibit 1, pp. 26:4-18; 22:13-23; Exhibit 4; Exhibit 10) Defendant Gonzales failed to place Martinez under investigation or conduct even minimal surveillance after learning that Martinez was allegedly engaging in sexual misconduct with the inmates in maintenance, including Ms. Curry. (exhibit 1, pp. 266:8-20; 267:4-19; 270:11-16). It is disputed that Defendant Gonzales was not aware of the risk Defendant Martinez posed to female inmates before Gonzales walked in on

Defendant Martinez and Ms. Curry during an act of sexual misconduct. (Exhibit 1, pp. 256:4-21; Exhibit 3, pp. 128:8-25; 129:1-9)

The Tenth Circuit has stated that the type of sexual abuse to which Ms. Curry was subjected "is repugnant to contemporary standards of decency and allegations of sexual abuse can satisfy the objective component of an Eight Amendment excessive force claim." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). Plaintiff Curry should have been provided the right to be secure in her bodily integrity and free from attack by prison officers and supervisors. *Hovator v. Robinson*, 1 F.3d 1063, 1068 (10thCir. 1983).

In essence, Defendant Gonzales argues that he simply was not aware that Martinez was a predator and that because Ms. Curry allegedly denied the assaults on January 10, 2018, Defendant Gonzales was not required to do any follow-up investigation to ensure the safety of Ms. Curry and other inmates. (*See* doc.141 at 12) However, as a supervisor, Defendant Gonzales was required to contact a victim advocate and refer Ms. Curry to mental health when the allegations she had been sexually assaulted by Martinez surfaced. (Exhibit 9, pp. 2, 4). There is no evidence that was done. To argue that Defendant Gonzales did what he was required to do is a superficial argument that cannot withstand even minimal scrutiny. *See, e.g., Ware v. Jackson County, Mo.*, 150 F.3d 873, 882 (8th Cir. 1998) ("[T]he existence of written policies of a defendant are of no moment in the face of evidence that such policies are neither followed nor enforced.")."The knowing failure to enforce policies necessary to the safety of inmates may rise to the level of deliberate indifference." *Tafoya*, 516 F.3d at 919 (*citing LaMarca v. Turner*, 995 F.2d 1526, 1536 (11th Cir.1993) (finding deliberate indifference where prison official "failed to ensure that his direct subordinates followed the policies he established"); *Goka v. Bobbitt*, 862 F.2d 646, 652 (7th Cir.1988) (holding that

failure to enforce a policy where the policy is critical to inmate safety may rise to the level of deliberate indifference)).

Plaintiff Curry has set forth sufficient credible facts from which a jury may infer that Robert Gonzales was aware prior to the sexual assault against Ms. Curry that Defendant Martinez posed a threat to the health and safety of the inmates. Robert Gonzales was also put on notice that Martinez was engaging in inappropriate conduct when Gonzales walked in on Defendant Martinez and Ms. Curry in the middle of an act of sexual assault. Yet, Gonzales did absolutely nothing and Martinez continued to assault Ms. Curry. In fact, even after staff and inmates came forward to report sexual misconduct and assaults by Martinez against Ms. Curry in January 2018, Robert Gonzales did absolutely nothing to monitor, discipline or investigate Defendant Martinez and he once again raped Ms. Curry. (exhibit 3, p. 202:14-20; Exhibit 1, pp. 262:3-18; 263:1-11; doc. 1 at p. 7, ππ68-72; Exhibit 10, p.2) Patently, sufficient material facts regarding Defendant Gonzales' deliberate indifference are currently in dispute, thereby precluding summary judgment.

### C. A Jury May Conclude Defendant Robert Gonzales' "Deliberate Indifference"

In arguing that he had no knowledge of the sexual assaults on Ms. Curry and therefore could not have been  deliberately indifferent, Defendant Gonzales notes that it is undisputed that Gonzales did not see Martinez sexually assault Ms. Curry, therefore he could not have been deliberately indifferent. (Doc. 141 at 11) By noting that he had no knowledge Martinez was engaging in inappropriate conduct with Ms. Curry, a fact Ms. Curry vehemently disputes, Defendant Gonzales essentially argues that he could not have been aware of a substantial risk of sexual abuse to Ms. Curry. However, Plaintiff is not required to show that Defendant Gonzales had "knowledge of a substantial risk to a particular inmate, or knowledge of the particular manner in which injury might occur." *Tafoya*, 516 F.3d at 916 (*citing Farmer*, 511 U.S. at 843). Instead,

as the *Dodds* Court held, deliberate indifference is sufficiently established where a plaintiff proves that the supervisor maintains policies or customs he knows create a substantial risk of constitutional injury to "people like Plaintiff." *Dodds*, 614 F.3d at 1206. And this knowledge of a substantial risk may be inferred "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Here, Ms. Curry has presented credible facts that show that well before Defendant Martinez began to sexually assault Ms. Curry, Robert Gonzales was aware that Defendant Martinez was a threat to the safety and health of the inmates. (exhibit 1, p. 254:11-16). Defendant Gonzales was also put on notice that Martinez was engaging in inappropriate conduct when, even by Gonzales' own admission, he found Martinez and Ms. Curry in a suspicious situation where her shoe was off. (Exhibit 1. p. 264:20-24) The notice became even more clear when Nurse Sisneros, Sgt. Eva Ortiz, Amy Sedillo, Inmate Wilson and another inmate reported that there was sexual misconduct occurring between Martinez and Ms. Curry. (Exhibits 7, 6, 5) To argue that, because Ms. Curry allegedly denied the allegations, Defendant Gonzales was relieved of any duty, rings hollow. In fact, it is disputed that Ms. Curry sincerely denied the allegations. According to Ms. Curry, Defendant Robert Gonzales directed to write a statement indicating that nothing had happened with Defendant Martinez. (Exhibit 3, p. 136:6-16) By manipulating Ms. Curry into stating that nothing had happened with Defendant Martinez, Defendant Gonzales fostered an environment where Defendant Martinez was free to continue abusing Ms. Curry and other inmates. (Exhibit 3, p.136:6-16; Exhibit 1, pp. 291:16-25;  292:4-13) After Defendant Gonzales was made aware of Defendant Martinez's misconduct against inmates, Robert Gonzales did nothing to alleviate the substantial risks to the safety of inmates like Plaintiff. *See, e.g., Tafoya*, 516 F.3d at 916. Defendant Gonzales was the chief of security responsible conducting investigations if there is a complaint of

inappropriate contact between staff and inmates (Exhibit 1, pp. 22:13-25; 23:1-8) As chief of security, Defendant Gonzales was also responsible for the safety of the inmates. (Exhibit 1, p. 26:11-15). Yet, he failed to undertake steps to ensure that Martinez was properly investigated and did not continue to have access to inmates or to take administrative action against Martinez. (Exhibit 1 at pp. 262:3-18, 263:1-11, 267:4-19) To the contrary, after January 10, 2018, Martinez continued to sexually harass and assault Ms. Curry by digitally penetrating her at least once after January 2018. (doc. 1, p. 7, ππ 68-72; Exhibit 10, p.2)

Gonzales' deliberate indifference is further demonstrated by the fact that despite being responsible for the cameras at SCC, he did not do anything to address the camera blind spots and Martinez was free to continue abusing Ms. Curry after January 2018. (Exhibit 3, pp. 223:22-25, 224:1-9) Mr. Gonzales' deliberate indifference is also clear by the fact that he failed to discuss or inform Warden Vigil of the allegations against Joseph Martinez. (exhibit 11, p. 135:22-25, 136:1-4).

As the Honorable James Browning noted,

> The Tenth Circuit has held repeatedly that correctional supervisors are liable for failing to protect inmates from abuse by the supervisors' staff. In *Tafoya v. Salazar*, the Tenth Circuit concluded that a sheriff was liable for failing to prevent sexual assaults in a jail, because he maintained a jail in which sexual assault was exceedingly likely. *See* 516 F.3d at 918-19.

*Green et. al. v. Padilla et.al.*, 484 F.Supp.3d 1098, 1156 (D.N.M. 2020). In denying one of the supervisory defendant's motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) in *Green*, the Honorable James Browning ruled that the Plaintiff had presented sufficient evidence to support the supervisory defendant's deliberate indifference to a known risk of harm to her:

> In a scenario with allegations similar to Green's, the Honorable Duross Fitzpatrick, Senior United States District Court Judge for the United States District Court for the Middle District of Georgia, in *Brown v. Smith*, 5:05-CV-475 (DF), 2006 WL

1890192 (M.D. Ga. July 10, 2006)(Fitzpatrick, J.), concluded that the inmate's allegations that the defendant "improperly and inadequately trained and supervised his staff, [and] failed to investigate incidents of alleged sexual assaults . . . ," sufficiently pleaded facts that would establish violation of clearly established law to overcome the defendant's assertion of qualified immunity under § 1983 for the inmate's alleged sexual assault by a prison guard. 2006 WL 1890192, at *7.

484 F.Supp.3d at 1158.

The undisputed facts presented here by Plaintiff Curry and evidence presented contemporaneously with this response demonstrate that a jury could reasonably infer that even after Robert Gonzales was aware of the allegations against Martinez posing a risk to SCC inmates, he did nothing to protect the inmates from Martinez. (Exhibit 1, pp. 256:4-14; 254:11-16). Thereafter, despite Gonzales' observation of a suspicious situation between Martinez and Ms. Curry, Gonzales did nothing to protect Ms. Curry. And when complaints could no longer be ignored, Defendant Gonzales directed Ms. Curry to deny the allegations and failed to do any meaningful investigation. Gonzales' deliberate indifference allowed Martinez to assault Ms. Curry yet again after January 2018. (doc. 1, p. 7, ππ 68-72; Exhibit 10, p.2) Gonzales continued to go about business as usual, without taking corrective action or administrative measures to protect the inmates from Martinez.

For example, prior to Gonzales' observation of Defendant Martinez and Ms. Curry in what he termed a suspicious situation, he was already aware that Martinez posed a threat to the inmates. Then, after Gonzales walked in on Martinez sexually assaulting Ms. Curry, Gonzales failed to investigate,[1] and the abuse continued. When the allegations could no longer be whitewashed, Defendant Gonzales directed Ms. Curry to deny the allegations. (exhibit 3, p. 136:8-12)

---

[1] Gonzales' argument that on the date Ms. Curry stated Defendant Gonzales walked in on Defendant Martinez  sexually assaulting her, Ms. Curry was not an inmate at SCC is a red herring because even by Gonzales' own admission this incident occurred at SCC while Ms. Curry was an

Given the additional material facts set forth by Plaintiff Curry in Exhibits 1-9 attached hereto, a jury could easily conclude that Defendant Gonzales failed to recognize a substantial risk from the allegations of misconduct made about Defendant. Therefore, Gonzales' personal knowledge and his failure to take action to place Martinez under investigation or on administrative leave during the investigation, to ensure Martinez did not have access to any inmates, show that Defendant Gonzales deliberately chose to disregard Plaintiff Curry and other inmates' safety and well-being. Accordingly, summary judgment at this juncture is premature and must be denied.

Wherefore, for the foregoing reasons, Plaintiff Curry respectfully requests this Honorable Court deny defendant Robert Gonzales' motion for summary judgment in its entirety.

Respectfully Submitted,

electronically filed on 12/9/21
Erlinda O. Johnson
Attorney at Law
620 Roma Ave. N.W.
Albuquerque, NM  87102
505-792-4048

Electronically filed 12/9/21
Justine Fox Young
5501 Eagle Rock Ave. NE, Suite C2
Albuquerque, NM 87113
505-796-8268

*Attorneys for Plaintiff Curry*

I HEREBY CERTIFY that a true and correct
copy of the foregoing pleading was electronically
served on all counsel of record upon this 9th
day of December 2021, via the Court's CM/ECF
automated filing system.

---

inmate. Ms. Curry admitted she did not recall the exact date of the incident but stated that it happened while she was an inmate at SCC. (exhibit 3, p.127:3-7; Exhibit 10)

_____/s/_____
Erlinda O. Johnson