IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LISA CURRY AND
RHIANNON MONTOYA,

        Plaintiffs,

v.                                       No. CIV 20-0116 RB/SCY

OFFICER MALCOLM J. GONZALES,
OFFICER JOSEPH J. MARTINEZ,
OFFICER J.P. VALDEZ, WARDEN
MARIANNA VIGIL, AND CAPTAIN
ROBERT GONZALES, IN THEIR
INDIVIDUAL CAPACITIES,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Lisa Curry alleges that Defendant Joseph J. Martinez, formerly a correctional officer (CO) at the Springer Correctional Center (SCC), used his position of power to sexually abuse Curry while she was an inmate at SCC. Defendant Robert Gonzales was Chief of Security at SCC at the time of the abuse. Curry brings a 42 U.S.C. § 1983 suit and asserts a supervisory liability claim against Gonzales alleging that he violated her Eighth Amendment rights. Gonzales moves for summary judgment on the basis of qualified immunity. Curry substantively responds and also moves for further discovery under Federal Rule of Civil Procedure 56(d). Gonzales seeks to strike a declaration Curry submitted with her response. For the reasons discussed in this Opinion, the Court finds that Gonzales is not entitled to qualified immunity and will **deny** summary judgment, **deny** the motion to strike, and **deny** the request for further discovery.

## I.     Background

Curry was incarcerated at SCC in Springer, New Mexico from approximately August 2017

through March 2018.[1] (*See* Docs. 141-1 at 69:9–13; 141-5; 158-10 ¶ 3; *see also* Doc. 158-2 at 2.) Gonzales was SCC's Chief of Security and was responsible for "overseeing all the security operations of the institution" (*i.e.*, safety, issues with the COs, breaches of security, and cameras) and for conducting investigations on complaints of inappropriate conduct between staff and inmates that came to his attention. (*See* Doc. 158-1 at 22:7–23:8, 26:4–15.) Shawn Rosenbarker served as SCC's Prison Rape Elimination Act (PREA) Compliance Manager. (Doc. 170-1 at 12:8–21.) Rosenbarker reported on PREA matters to Warden Marianna Vigil and to the state PREA Coordinator. (*Id.* at 18:5–20; Doc. 170-2 at 33:9–34:2.) Rosenbarker also worked as a shift commander and managed emergency preparedness, rosters, and "inputting of time" at SCC, and he reported to both Gonzales and Vigil for these duties. (*See* Doc. 170-1 at 17:8–18:20.)

While at SCC, Curry worked in the maintenance department. (*See* Doc. 141-1 at 68:19–21, 134:13–18.) Martinez, a maintenance department officer, began sexually assaulting Curry sometime in 2017. (*See* Docs. 158-3 at 202:14–20; 158-10 ¶ 4.) Curry asserts that Martinez raped her approximately twice per week over the course of several months. (*See* Doc. 158-3 at 202:14–20.) The parties focus on one specific incident, in which Martinez assaulted Curry in the "mechanics shop" (the shop)[2] (*See id.* at 126:22–128:4.) Martinez took Curry to work on a heater in a small closet on the upper floor of the shop. (*Id.* at 128:5–20.) Curry concedes that the two were in this location legitimately as part of her job. (*Id.* at 134:9–18.) Martinez told Curry to undress and dance for him. (*Id.* at 128:22–129:1.) Curry initially testified that the two did *not* have sex on this occasion. (*Id.* at 129:2–4, 130:14–20.) During later questioning by her own attorney,

---

[1] Gonzales makes much of the fact that Curry inaccurately recalls the dates of her incarceration at SCC. (*See, e.g.*, Doc. 141 at 3–4, 11.) At the time the parties submitted their briefs on Gonzales's motion, however, discovery was still ongoing, and Curry had not received her inmate file. (*See* Doc. 158-2 at 4.)

[2] Curry is unsure of the date of this incident. (*See* Doc. 158-3 at 126:14–127:7.)

Curry testified that she and Martinez *did* have sex during this incident.[3] (*See id.* at 228:8–229:9.)

Regardless, while they were in the room, Martinez heard a noise and told Curry to get dressed. (*See id.* at 129:1–6.) Gonzales and Rosenbarker were checking the motor pool area and noticed that the shop's door was unsecured. (*See* Doc. 158-1 at 247:2–6.) They walked into the shop and found Robin Wilson, another inmate employed by maintenance, on the lower level. (*Id.* at 247:6–8; *see also* Doc. 158-8.) They heard talking coming from the upper level of the shop, and Martinez and Curry "came down shortly after." (*See* Doc. 158-1 at 247:9–248:3.) Curry was dressed but had only put on one of her boots. (*See* Doc. 158-3 at 129:4–6.) Gonzales asked why Curry's boot was off, and Martinez responded that he was using it to hit the heater vent. (*Id.* at 129:4–12.) Curry testified that there was a piece of equipment that, in the past, other employees had to kick with their shoe or hit with a hammer to make work. (*See id.* at 129:15–130:8.)

Gonzales found the incident "suspicious" and conducted an investigation. (*See* Docs. 158-1 at 248:16–249:22; 158-8.) He reviewed video footage of the shop and saw Martinez and Curry go upstairs approximately five minutes before he and Rosenbarker entered.[4] (Docs. 158:1 at 248:20–249:2; 158-8.) He interviewed Wilson, "but she did not provide any specific information regarding inappropriate actions from" Martinez or Curry. (Doc. 158-8.) Wilson asked, however, to be reassigned to "a job away from maintenance, because of Lisa Curry and Joseph Martinez." (*Id.*) Wilson "did not provide specific details" about her request. (*Id.*) There is no evidence that Gonzales further interviewed Curry or Martinez about the incident or reviewed any other camera footage of the two. (*See* Doc. 158-1 at 264:20–265:1.) The parties agree that Curry did not

---

[3] The Court finds that whether the two had sex or not is not material, as it is undisputed that Gonzales deemed the incident "suspicious" based on what he observed. (*See* Doc. 158-1 at 266:23–267:3; 158–8.)

[4] The parties agree that there were blind spots the cameras could not have monitored. (*See, e.g.*, Docs. 158-1 at 78:19–79:4; 158-3 at 223:22–224:14.)

officially report any rape while she was at SCC.[5] (*See* Doc. 141-1 at 135:1–7.) Gonzales did not personally continue to do any surveillance of Martinez and Curry after this incident. (*See* Doc. 158-1 at 263:6–15.) Gonzales testified that Rosenbarker performed some further investigation, but he is not aware of those details. (*Id.* at 263:11–15; *see also* Doc. 158-8.)

On January 10, 2018, Gonzales gained information that an anonymous inmate told Sergeant Eva Ortiz that Martinez was "screwing some of his inmates." (Docs. 158-6; 158-1 at 268:8–22.) The inmate reported that Curry was telling other inmates "that she smells just like [Martinez's] cologne" and bragging that Martinez was well-endowed. (Doc. 158-6.) Around the same time, SCC Nurse Christine Sisneros reported an incident she witnessed between Martinez and Curry. (*See* Doc. 158-7; *see also* Doc. 158-1 at 270:5–10.) Sisneros stated that Martinez asked for Band-Aids. (Doc. 158-7 at 1.) Sisneros gave him the Band-Aids and then heard Martinez and Curry talking and giggling in the hallway. (*Id.*) Sisneros went to the hallway and found Martinez "standing in very close proximity to [Curry] applying Band-Aids to her hands." (*Id.*) When the pair realized Sisneros was there, they moved away from each other. (*See id.*)

Gonzales was aware that Rosenbarker began a PREA investigation in January 2018. (*See* Docs. 141-1 at 68:5–8, 136:2–19, 212:9–16; 158-1 at 268:8–22, 271:6–21.) As part of the PREA investigation, Curry was removed from her prison job and placed in segregation for two days. (*See* Docs. 141 at 6; 141-1 at 68:25–69:4, 136:2–19.) Curry testified that Gonzales and Rosenbarker approached her in segregation, and Gonzales directed Curry "to write a statement saying that . . . nothing happened."[6] (*See* Doc. 141-1 at 136:2–16, 212:9–16; *see also* Doc. 141-6 (Curry's

---

[5] Curry told an SCC counselor about the assaults because she knew that it would be confidential. (*See* Doc. 158-3 at 231:3–17.)

[6] Gonzales states that he does not dispute Curry's testimony regarding the statement "for purposes of this motion only." (Doc. 170 at 7.) He points out that she made this claim for the first time at her deposition. (*See id.*)

handwritten statement affirming that "I have no relations going on with any officer.").) Curry also testified that she did not report the rapes because Martinez had threatened her—"he told [her] that he had the union on his side and that [she] wouldn't be believed." (Doc. 158-3 at 229:18–230:9.) Curry was also worried that Martinez would hurt her family if she reported him. (*See id.* at 230:12– 231:2.) Curry later participated in an interview with a female investigator. (*See* Doc. 141-1 at 211:5–212:8.) She did not tell the investigator about the rapes. (*Id.* at 212:1–8.) Although Curry knew about the PREA program and how to use it, she never filed a PREA complaint. (*See id.* at 150:12–22; *see also* Doc. 141-7.)

Gonzales did not personally investigate Martinez after the January reports, but he did refer the matter to the Office of Professional Standards (OPS) for investigation on January 23, 2018. (*See* Docs. 158-1 at 268:8–22, 270:11–16; 170-4 at 3 (noting that Gonzales submitted a "Referral of Alleged or Suspected Staff Misconduct" to OPS on January 23, 2018).) OPS returned its investigation report to Vigil on April 30, 2018. (*Id.* at 2.) Vigil does not recall discussing these sexual assault allegations with Gonzales. (*See* Doc. 158-11 at 135:22–136:4.) Curry asserts that Martinez sexually assaulted her one time after January 2018—in March 2018, while standing outside Unit 7.[7] (*See* Doc. 158-10 ¶ 7.)

On August 6, 2018, Agent Mark Jackson with the New Mexico State Police interviewed Curry. (*See* Doc. 158-4.) By this time, Martinez had already resigned from SCC. (*See id.* at 3 (noting that Warden Vigil provided Jackson with a copy of Martinez's resignation letter); *see also* Doc. 170-2 at 173:12–24.) Curry told Jackson that Martinez had assaulted her on a daily basis for

---

[7] Gonzales objects to this statement on the basis that Curry did not include any related allegations in her Complaint, responses to interrogatories, or deposition. (*See* Doc. 170 at 5–6.) This objection is also the subject of a motion to strike. (*See* Doc. 172.) For the reasons discussed in Section III of this Opinion below, the Court will deny the motion to strike and consider Curry's assertion that Martinez assaulted her sometime after January 2018.

approximately three months.[8] (*See id.* at 2.) Martinez resigned after an investigation into allegations that he had been bringing drugs into SCC. (*See id.* at 173:5–24.) Gonzales testified that "Martinez'[s] name had come up regarding bringing narcotics into the facility numerous times, going back [several years]." (*See* Doc. 158-8.)

Curry filed suit in February 2020. (Compl.) She brings one federal claim against Gonzales under § 1983: cruel and unusual punishment in violation of the Eighth Amendment.[9] (*Id.* ¶¶ 161–66.) Gonzales moves for summary judgment on the basis of qualified immunity. (Doc. 141.)

## II.   Legal Standards

### A.   Summary Judgment Standard

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Halley v. Huckaby*, 902 F.3d 1136, 1143 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1347 (2019) (citing *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018)). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party. *Id.* "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" *Tanner v. San Juan Cnty. Sheriff's Off.*, 864 F. Supp. 2d 1090, 1106 (D.N.M. 2012) (quoting *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the movant meets this burden, rule 56 requires the non-moving party to

---

[8] Curry told Jackson that the assaults began in September or October 2016 and continued through December 2016. (*See* Doc. 158-4 at 2.)

[9] The Court dismissed Curry's state claim against Gonzales on September 27, 2021. (Doc. 122.)

designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256). A party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Id.* at 1107 (quotation and citation omitted). Instead, the non-moving party must come forward with "sufficient evidence on which the factfinder could reasonably find" in their favor. *Id.* (citations omitted). Evidence that is "merely colorable," *Anderson*, 477 U.S. at 249, or consists only of "[u]nsubstantiated allegations[,]" *McCoy*, 887 F.3d at 1044, is insufficient.

### B.      Qualified Immunity Standard

The Court reviews summary judgment motions based on a qualified immunity defense somewhat differently. *See Halley*, 902 F.3d at 1144. "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id.* (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011)). "A constitutional right is clearly established if it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right." *Id.* (citation omitted). "Generally, 'existing precedent must have placed the statutory or constitutional question beyond debate' to clearly establish a right." *Id.* (quoting *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018)). "The question is not whether a 'broad general proposition' was clearly established, but 'whether the violative nature of particular conduct [was] clearly established.'" *Id.* (quoting *Redmond*, 882 F.3d at 935) (quotation marks omitted).

"If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment . . . ." *Id.* (quoting *Koch*, 660 F.3d at

1238). And while the "Court must construe the facts in the light most favorable to the plaintiff as the nonmoving party, 'a plaintiff's version of the facts must find support in the record.'" *Koch*, 660 F.3d at 1238 (quoting *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009)). If the plaintiff's "version of the facts is 'blatantly contradicted by the record, so that no reasonable jury could believe it,' then [the Court] 'should not adopt that version of the facts.'" *Halley*, 902 F.3d at 1144 (quoting *Thomson*, 584 F.3d at 1312).

## III. The Court will deny Gonzales's motion to strike.

Gonzales argues that paragraph 7 of Curry's declaration (Doc. 158-10) raises a sham issue of fact and should be stricken under the factors outlined in *Franks v. Nimmo*, 796 F.2d 1230 (10th Cir. 1986). (*See* Doc. 172.) "Sham affidavits, though 'unusual,' arise when a witness submits an affidavit that contradicts the witness's prior testimony." *Knitter v. Corvias Mil. Living, LLC*, 758 F.3d 1214, 1218 n.3 (10th Cir. 2014) (citing *Law Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1169 (10th Cir. 2009)). Curry contends that her affidavit does not contradict her deposition testimony, but "simply clarifies issues she was not able to clarify during her deposition." (Doc. 174 at 4.) While the issue is a close one, the Court finds that Curry's affidavit does not contradict her prior deposition testimony and should not be stricken.

During her deposition, defense attorney CaraLyn Banks asked Curry about an incident described in her Complaint that occurred outside of Unit 7 in March 2018. (*See* Doc. 158-3 at 223:9–13.) Curry could not recall the day or time of the incident, but she remembered that she and Martinez were standing in front of the door to Unit 7 in a blind spot where the cameras could not see them. (*Id.* at 223:16–224:6.) Banks asked, "And so, what happened sometime in March outside of Unit 7?" (*Id.* at 224:15–16.) Curry stated, "Um – honestly, I think – I don't – we were talking about the case and everything, or what was happening." (*Id.* at 224:17–19.) Banks asked,

"Anything else you remember about the incident that's happened sometime in March of 2018 outside of Unit 7?" (*Id.* at 224:20–22.) Curry responded, "I don't." (*Id.* at 224:23.)

> In her more recent declaration, Curry states:
>
> Sometime after I was interviewed by SCC personnel in January 2018, about Joseph Martinez and allegations of sexual misconduct, I was approached by Joseph Martinez outside of SCC housing unit 7. At that time, he pulled me towards me [sic] and started kissing me. He also digitally penetrated my vagina.

(Doc. 158-10 ¶ 7.) Gonzales argues that this statement is contrary to her deposition testimony, in which she did not recall any assault. (*See* Doc. 178 at 3.) Yet, Defense counsel did not specifically ask Curry if Martinez assaulted her outside of Unit 7. As a result, Curry's new declaration does not *contradict* her previous testimony. Thus, the circumstances are distinguishable from those "unusual cases in which the conflict between the testimony and the affidavit raises only a sham issue." *See Franks*, 796 F.2d at 1237.

For example, in *Muñoz v. FCA US LLC*, the plaintiff (Muñoz) "unequivocally and plainly stated in his deposition that he did not know what part of his body hit what part of the vehicle." No. CV 17-881 WJ/SCY, 2020 WL 6869950, at *4 (D.N.M. Nov. 23, 2020). In a later affidavit, Muñoz stated that "he now 'knows' that his knee, shoulder, arm and face struck hard surfaces inside the vehicle" and "that the only hard surface he "could have struck" was the steering wheel . . . ." *Id.* The court found that the later statements substantively changed Muñoz's deposition testimony and created a sham issue of fact. *See id.* In *Macias v. Southwest Cheese Co., L.L.C.*, the plaintiff (Macias) "specifically stated that . . . she never complained to anyone in Human Resources" about a colleague's conduct and harassment. No. CV 12-350 LH/WPL, 2014 WL 11430977, at *4 (D.N.M. June 11, 2014), *aff'd sub nom.* 624 F. App'x 628 (10th Cir. 2015). The court struck a later affidavit in which Macias "stated that she reported [her colleague's] conduct

and harassment to [the] Human Resources Director." *Id.* The Tenth Circuit agreed that the later affidavit "plainly contradict[ed]" the deposition testimony and the "court acted within its discretion in striking it." 624 F. App'x at 632.

Here, Curry did not testify that Martinez did *not* sexually assault her outside of Unit 7. She did not testify that she *could not recall* whether Martinez sexually assaulted her outside of Unit 7. *See, e.g.*, *Juarez v. Utah Dep't of Health-Family Dental Plan*, No. 205CV0053PGC, 2006 WL 2623905, at *7–8 (D. Utah Sept. 11, 2006), *aff'd sub nom.* 263 F. App'x 726 (10th Cir. 2008) (where plaintiff testified at her deposition "that she did not remember the specific, negative comments people had made about her[,]" court found later contradictory affidavit should be excluded). Curry was never explicitly asked about sexual assault outside of Unit 7, and so she did not give unequivocal statements about an assault. Instead, defense counsel vaguely asked "so what happened in March outside of Unit 7?" (Doc. 158-3 at 224:15–16.) Curry said that she and Martinez talked, and when defense counsel asked if there was "[a]nything else [she] remember[ed] about the incident[,]" Curry answered that she did not.[10] (*Id.* at 224:17–23.)

In *Hernandez v. Valley View Hospital Ass'n*, the defendant argued on appeal "that the district court should have disregarded the affidavits submitted in [the plaintiff's] response as 'sham affidavits.'" 684 F.3d 950, 956 n.3 (10th Cir. 2012) (citing *Franks*, 796 F.2d at 1237). The Tenth Circuit noted that "[t]o be disregarded as a sham, an affidavit must contradict prior sworn statements." *Id.* (citing *Law Co.*, 577 F.3d at 1169). The defendant asserted that plaintiff testified "she heard only two [race-based] jokes." *Id.* The Tenth Circuit disagreed, noting that at the "deposition, [the defendant] asked [the plaintiff] to describe [the] racial jokes[,]" and she

---

[10] It is unfortunate that Curry's own attorney did not ask her questions to clarify her testimony at that time, where Gonzales would have had the opportunity to cross-examine her.

"described the barbeque and tamale jokes and '[s]tuff like that.'" *Id.* (quotation omitted). Her later affidavit "provided additional examples that did not contradict her testimony." *Id.* Although the situation here exemplifies a closer call,[11] the Court finds *Hernandez* instructive. Curry's recent declaration does not contradict any specific or unequivocal statements. Accordingly, the Court finds that the declaration is not an attempt to create a sham fact issue and will deny the motion to strike the declaration. Gonzales will have an opportunity to cross-examine Curry about her inconsistent memory on dates before the jury.

## IV.    The Court will deny Gonzales's motion for summary judgment.

### A.    Gonzales is not entitled to qualified immunity.

Curry asserts an Eighth Amendment claim under § 1983 for supervisory liability against Gonzales. "[A]n inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." *Keith v. Koerner*, 843 F.3d 833, 837 (10th Cir. 2016) (quotation omitted). "Because vicarious liability is inapplicable to . . . § 1983 suits," Curry must plead factual allegations to show that Gonzales, through his own actions, violated her constitutional rights. *See id.* at 838 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). To do so, Curry "'must show an affirmative link between [Gonzales] and the constitutional violation,' which requires proof of three interrelated elements: (1) personal involvement; (2) causation; and (3) state of mind." *Id.* (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)) (quotation marks omitted). The third prong—culpable state of mind—can be established by showing that the official "acted with deliberate indifference." *See Perry v. Durborow*, 892 F.3d 1116, 1122 (10th

---

[11] Curry alleges in her Complaint that Martinez digitally raped her outside of Unit 7 in March 2018. (Compl. ¶¶ 70–72.) In written discovery, Gonzales asked Curry to describe "the date, location, and manner of each incident of inappropriate behavior, sexual abuse and/or rape . . . ." (Doc. 172-1 at 2.) In response, Curry described several instances (but not one outside Unit 7) and stated that "[t]he sexual assaults . . . went on until January 2018." (*Id.* at 4.)

Cir. 2018) (quotation omitted). The parties center their arguments on the third element.

To establish deliberate indifference, Curry must show that Gonzales was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Keith*, 843 F.3d at 848 (quoting *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008)). The Tenth Circuit has found that "[i]naction, in certain instances, can be enough"; for example, if the official knows "of a substantial risk of serious harm" and "fails to take reasonable steps to alleviate that risk." *Id.* (quotation marks and citations omitted). "But 'even if a prison official has knowledge of a substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate that risk.'" *Id.* (quoting *Tafoya*, 516 F.3d at 916). "In identifying the relevant risk, [the Court does] not focus on the risk to a specific inmate by a specific employee; [it] instead analyze[s] whether the combined circumstances created a risk for inmates in the plaintiff's situation." *Id.* (citation omitted). In *Keith*, for example, the plaintiff alleged that the warden was aware of inmates' allegations regarding a prison employee's abuse but did not believe or act on them. *See id.* at 849. Together with the warden's failure to enforce policies to keep inmates safe from abuse, the court found the allegations sufficient to meet the state-of-mind prong. *See id.*

Here, Curry argues that Gonzales had information about Martinez that should have prompted Gonzales to act, and his failure to do so resulted in additional assaults. (*See* Doc. 158 at 16.) Curry refers to several pieces of information: (1) allegations that Martinez was bringing drugs into SCC; (2) his discovery of Martinez and Curry in the shop under "suspicious" circumstances; and (3) the January 2018 reports from an inmate and Sisneros. (*See id.*) At the outset, the Court finds that no reasonable jury could conclude that Gonzales's knowledge of drug-smuggling allegations would lead him to draw an inference that Martinez was sexually assaulting inmates.

12

*See, e.g.*, *Ortiz v. New Mexico*, 550 F. Supp. 3d 1020, 1160 (D.N.M. 2021) (noting that defendants were not "'aware of facts from which the inference could be drawn' that [a CO] was raping or sexually assaulting [the plaintiff]") (quoting *Perry*, 892 F.3d at 1122). The second two pieces of information warrant more discussion.

Curry argues that "Gonzales did absolutely nothing" after he "walked in on Defendant Martinez and Ms. Curry in the middle of an act of sexual assault" in the shop. (Doc. 158 at 18.) The evidence shows otherwise. First, Gonzales immediately asked Martinez why Curry had her shoe off. Martinez's explanation, that he was using it to hit a piece of equipment, was not entirely far-fetched, as Curry testified that there was equipment that maintenance employees had hit or kicked to make work on previous occasions. He also interviewed the other inmate present in the shop, but she did not report inappropriate conduct by Martinez or Curry. Gonzales later reviewed video footage of the area and learned that the two had entered the shop approximately five minutes before he and Rosenbarker entered. Although the Court finds it curious that Gonzales did not interview Curry herself after this incident, Curry offers no authority to show that the investigation was unreasonable.

The January 2018 reports alone are sufficient to lead to an inference that Martinez was engaging in inappropriate conduct with Curry. Again, Curry argues that "Gonzales did nothing to alleviate substantial risks to the safety of inmates like [her]" after January 2018. (Doc. 158 at 19.) She also raises the fact that Gonzales directed her "to write a statement indicating that nothing had happened" in January 2018. (*Id.* (citing Doc. 158-3 at 136:6–16).) Curry argues that "[b]y manipulating [her] into stating that nothing had happened with Defendant Martinez, Defendant Gonzales fostered an environment where Defendant Martinez was free to continue abusing Ms. Curry and other inmates." (*Id.*) The Court agrees. Viewing the facts in a light most favorable to

Curry, Gonzales used his position of power to force Curry to deny that she was being repeatedly sexually assaulted.[12]

Gonzales asserts that "[a]lthough [he] did not personally place Martinez under investigation, he *did* refer the matter to [OPS] for investigation." (Doc. 170 at 5 (citing Doc. 170-4).) While this may be true, it does not explain either the two-week lapse between the reports and the referral or why Gonzales failed to conduct an internal investigation himself, as such investigations were part of his responsibilities as Chief of Security. (*See* Doc. 158-1 at 22:17–23:8.) In sum the Court finds that Curry has demonstrated facts to show that Gonzales was deliberately indifferent.

Gonzales argues that even assuming he was deliberately indifferent to Curry's rights, she fails to identify existing caselaw that clearly establishes such violation. (Doc. 170 at 11.) Under Tenth Circuit precedent, Curry would normally have to "'identify a case where an offic[ial] acting under similar circumstances as [Gonzales] was held to have violated' the Eighth or Fourteenth Amendments under a theory of supervisory liability." *See Perry*, 892 F.3d at 1124 (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). Curry references three cases: *Tafoya v. Salazar*, *Green v. Padilla*, and *Brown v. Smith*.

In *Tafoya v. Salazar*, the evidence showed that the sheriff, who had been previously named in a lawsuit regarding the sexual assault of inmates by COs, "made only minimal efforts to address the glaring safety problems at the jail." 516 F.3d at 918. Although the sheriff instituted "a 'no-

---

[12] In his reply brief, Gonzales argues that "the 'allegations' that [Curry] was allegedly told to deny were allegations that she and Martinez were engaged in a *consensual* sexual relationship." (Doc. 170 at 9.) The Court does not agree with this interpretation of Curry's deposition testimony. Curry testified that Gonzales "told [her] to write a statement saying that – that nothing happened." (Doc. 158-3 at 136:8–10.) She did not testify that he discussed with her whether the relationship was consensual. Either way, assuming Gonzales directed her to write that she was not having a consensual or a non-consensual sexual relationship with Martinez, he still abused his power by forcing her to make a statement denying any misconduct.

contact' policy, install[ed] . . . new surveillance cameras, hir[ed] additional female staff, and provid[ed] a half-day training regarding sexual contact between staff and inmates[,]" he did not "alter his 'lackadaisical' managerial style" or "impose serious threats of discipline for policy violations[,]" "he enforced the no-contact policy only infrequently[,] he continued to employ officers with known criminal records[,] and he eliminated the jail's grievance system because there were 'too many complaints.'" *See Keith*, 843 F.3d at 848 (quoting *Tafoya*, 516 F.3d at 918–21).

In *Green v. Padilla*, the court found that a supervisory liability claim survived a motion to dismiss where the plaintiff alleged that the warden "maintained an inadequate staff-to-inmate ration[,]" "refus[ed] to discipline [COs] known to be abusive towards female inmates[,]" and maintained "areas in which [COs] and female inmates interacted [with] no video surveillance." 484 F. Supp. 3d 1098, 1159 (D.N.M. 2020). Moreover, the warden had reports from the plaintiff and several other inmates that the defendant CO was abusing her and knew that state police had interviewed the plaintiff regarding the allegations. *Id.* Finally, the warden "did nothing to reduce [the defendant CO's] access to [the plaintiff], and so the abuse persisted." *Id.* at 1160. The *Green* court relied on the Tenth Circuit's decision in *Tafoya* and found that the warden did not just fail to address or prevent sexual assault, "but created an environment in which sexual assaults of inmates were more likely." *Id.* at 1156, 1160 (noting that in *Tafoya*, "the Tenth Circuit concluded that a sheriff was liable for failing to prevent sexual assaults in a jail, because he maintained a jail in which sexual assault was exceedingly likely") (citing *Tafoya*, 516 F.3d at 918–19).

Finally, in *Brown v. Smith*, which the *Green* court also cited, the court found that an inmate had pleaded facts sufficient to survive a motion to dismiss where he alleged that the defendant sheriff "improperly and inadequately trained and supervised his staff, failed to investigate incidents of alleged sexual assaults, and granted staff virtually unrestricted access to inmates, thereby

creating a permissive environment which allowed ill-intentioned staff members to prey on female inmates." No. 5:05-CV-475 (DF), 2006 WL 1890192, at *7 (M.D. Ga. July 10, 2006).

Curry claims that Gonzales's conduct was similar to the defendants' actions in these three cases. She points to the following conduct by Gonzales: (1) his knowledge that Martinez may have been smuggling drugs into SCC; (2) his observation of Martinez and Curry in the shop; (3) his direction to Curry to write a statement indicating that she was not involved with Martinez; (4) his failure to personally investigate or inform the warden about the January 2018 reports; (5) his failure to address camera blind spots; and (6) his failure to contact a victim advocate as per policy.[13] (*See* Doc. 158 at 17–22.) Gonzales argues that none of the cases Curry relies on "are factually similar enough to have rendered any violation in this case clearly established. (Doc. 170 at 11.)

The Court agrees that the conduct here is not factually similar to the cases on which Curry relies. Curry has not brought forward evidence, for example, that Gonzales knew that Martinez had previously sexually assaulted inmates, nor does she effectively argue that Gonzales created an environment where such assault was likely to occur. The Court finds though, that given the allegations regarding Gonzales's direction to Curry to write a statement denying the misconduct, together with his failure to investigate in the face of allegations of sexual misconduct, this is one of the rare cases where conduct is "so obviously unlawful" that qualified immunity is not warranted. *See Lowe v. Raemisch*, 864 F. 3d 1205, 1210–11 (10th Cir. 2017) (citations omitted).

---

[13] To be clear, the Court finds that some of the conduct Curry discusses is inapposite. First, as explained above, Gonzales's knowledge of the drug-smuggling allegations is irrelevant to his response to allegations of sexual abuse. And again, Curry has not shown that Gonzales's investigation after he encountered Martinez and Curry in the shop was unreasonable. Next, Curry fails to assert or establish that Gonzales had information that COs were assaulting inmates in blind spots. *See Keith*, 843 F.3d at 841 (finding that a prison warden was not entitled to qualified immunity after a maintenance employee sexually assaulted an inmate, in part because the warden was aware "that the maintenance program provided opportunities for employees to be outside of other people's eyesight, outside of cameras, inside of rooms with individual inmates") (quotation marks omitted). Likewise, Curry fails to cite authority to demonstrate that supervisory liability may be imposed under the Eighth Amendment for failure to refer an inmate to a victim advocate upon allegations of sexual misconduct under circumstances like those here.

There is no doubt that Gonzales failed to personally investigate or inform the warden about the January 2018 allegations. The Tenth Circuit has held that "prison officials . . . must take reasonable measures to guarantee the safety of inmates[,]" and "such reasonable measures include serious investigation and response when [the] official becomes aware of a risk to inmates . . . ." *Keith*, 843 F.3d at 850 (quotation marks and citations omitted). Moreover, despite two separate sources of information that Martinez was engaging in misconduct, Gonzales allegedly directed Curry to deny that anything was happening. Gonzales flagrantly abused his power as Chief of Security to quash Curry's rights to be secure in her bodily integrity and free from assault. Given that it was Gonzales's responsibility to protect inmates under his care, to blatantly manipulate one of those same inmates into signing a statement that absolved one of his employees from allegations of serious misconduct is conduct so reprehensible as to be obviously violative of Curry's constitutional rights. *See Keith*, 843 F.3d at 837; *see also, e.g.*, *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082–83 (10th Cir. 2015) (in noting that "some things are so obviously unlawful that they don't require detailed explanation[,]" the Tenth Circuit opined that "it would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt") (citation omitted). For these reasons, the Court finds that Gonzales is not entitled to qualified immunity and will deny the motion for summary judgment.

## V.     The Court denies Curry's motion for further discovery under Rule 56(d).

Curry asserts that "[t]he parties have not conducted any discovery in this matter with or related to Defendant Joseph Martinez" and asks the Court to defer considering Gonzales's motion for summary judgment while the parties conduct discovery on certain issues. (Doc. 158 at 3–4.) The Court extended a stay on discovery as to Martinez through February 1, 2022 because there is

a state criminal case pending against him based on Curry's allegations. (*See* Docs. 77; 148.)

Under Federal Rule of Civil Procedure 56(d),

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d); *see also Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1553–54 (10th Cir. 1993). "The general principle of Rule 56[(d)] is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (quoting *Anderson*, 477 U.S. at 250 n.5) (quotation marks omitted). "Rule 56(d) does not require, however, that summary judgment not be entered until discovery is complete." *Lopez v. Delta Int'l Mach. Corp.*, 312 F. Supp. 3d 1115, 1137 (D.N.M. 2018), *aff'd sub nom. Lopez v. Stanley Black & Decker, Inc.*, 764 F. App'x 703 (10th Cir. 2019) (citing *Price*, 232 F.3d at 784).

The Rule 56(d) movant must file an affidavit or declaration and "state with specificity how the desired time would allow it to meet its burden in opposing summary judgment." *Id.* (citing *Jensen*, 998 F.2d at 1554). "Rule 56(d) may not be invoked based solely upon the assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable." *Id.* (citing *Jensen*, 998 F.2d at 1554). "Moreover, while the summary judgment movant's exclusive control of information weighs heavily in favor of relief under 56(d), merely asserting such is insufficient to justify denial of summary judgment." *Id.* (citations omitted). "Furthermore, 'if the party filing the Rule 56[(d)] affidavit has been dilatory, or the information sought is either irrelevant to the summary judgment motion or merely cumulative, no extension will be granted.'" *Id.* (quoting *Jensen*, 998 F.2d at 1554 ("denying a 56(d) request stating 'the

record reflects that plaintiffs were dilatory in pursuing discovery prior to the filing of their 56[(d)] affidavit'")) (citing *Johnson ex rel. Cano v. Holmes*, 377 F. Supp. 2d 1039, 1044–45 (D.N.M. 2004) ("denying a 56(d) request where plaintiff did not explain why, during the discovery period that the court allowed, he did not obtain the discovery sought in his motion")).

A Rule 56(d) movant invokes the Court's discretion. *See Jensen*, 998 F.2d at 1553–54 (citation omitted). "Unless dilatory or lacking in merit," a Rule 56(d) motion "should be liberally treated." *Id.* at 1554 (quotation and citation omitted).

Curry seeks discovery on three issues: (1) whether Gonzales made statements to Martinez "about [his] interactions with the female inmates"; (2) whether Martinez is aware of whether Gonzales observed him interacting with Curry or other inmates; and (3) the date of the incident when Gonzales saw Curry and Martinez in the shop. (Doc. 158 at 3–4.) Regarding the third issue, Gonzales does not dispute the date of the incident in the shop; thus, further discovery is unnecessary. (*See* Doc. 170 at 12.) Related to the first two issues, Curry would like to ask Martinez about what he "knew about Gonzales's knowledge of Martinez's interactions with" female inmates, whether Gonzales talked to Martinez about any inappropriate conduct, "whether Martinez was placed on leave after Gonzales encountered Martinez and Ms. Curry in the mechanics room with her shoe off[,]" and "Martinez's observations about the supervision Gonzales provided to [COs] and whether Gonzales counseled or disciplined [COs] suspected of engaging in misconduct." (Doc. 158-2 at 3.) Gonzales argues that this information could have easily been discovered from questions posed to Gonzales himself. (Doc. 170 at 12.) The Court agrees. Curry "had ample opportunity to conduct discovery on information that Defendant Gonzales 'possesses' or that 'may have been relayed' to him[,]" including "conversations he had with Martinez." (*See id.*) Curry fails to explain why she was unable to present facts on these issues from the discovery

already conducted, as required by Rule 56(d). Moreover, Curry "does not identify the specific probable facts that [s]he anticipates discovering" by deposing Martinez, "so the Court cannot soundly say that the requested discovery is necessary for [her] to defend against the [motion for summary judgment]." *See Ganley v. Jojola*, 402 F. Supp. 3d 1021, 1098 (D.N.M. 2019).

Further, while Gonzales could not testify to Martinez's observations regarding Gonzales's counsel or discipline of COs, the Court finds that such discovery would not change the outcome here, as Curry does not argue that Gonzales consistently failed to counsel or discipline COs suspected of engaging in misconduct. *See id.* at 1099 (finding that further discovery about whether a defendant made false statements was unnecessary "because removing or clarifying the alleged false or misleading statements . . . would not vitiate probable cause for [the plaintiff's arrest"). In sum, the Court finds that the issues on which Curry seeks to depose Martinez are either cumulative to information Curry could have obtained by deposing Gonzales or unnecessary to decide the motion for summary judgment. The Court denies the Rule 56(d) motion.

**THEREFORE,**

**IT IS ORDERED** that Gonzales is not entitled to qualified immunity on Curry's federal claim and his Motion for Summary Judgment (Doc. 141) is **DENIED**;

**IT IS FURTHER ORDERED** that Gonzales's Motion to Strike Plaintiff's Declaration (Doc. 172) is **DENIED**;

**IT IS FURTHER ORDERED** that Curry's motion for discovery under Rule 56(d) (Doc. 158) is **DENIED**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE